# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| MARIAN THOMPSON ROBINSON | CIVIL ACTION |
| VERSUS | NO.  05-6270 |
| NEW ORLEANS EMPLOYERS ILA<br>AFL-CIO PENSION, WELFARE, VACATION<br>& HOLIDAY FUNDS | SECTION  "L" (4) |

## ORDER & REASONS

Before the Court is the defendant's Motion for Summary Judgment (Rec. Doc. 13).  The defendant asserts that, as a matter of law, the plaintiff is ineligible for benefits under the Pension Plan at issue.  The plaintiff opposes this motion, arguing that the defendant's denial of Plan benefits is an abuse of discretion, and seeks treatment of her opposition as a cross-motion for summary judgment.  For the following reasons, the defendant's motion is now GRANTED and the plaintiff's cross-motion is DENIED.

## I.     BACKGROUND

The plaintiff and the deceased, George Robinson, met in 1955 and dated for many years.  According to the plaintiff, Mr. Robinson moved into her house on Galvez Street in New Orleans, Louisiana in 1978.  George Robinson was employed as a longshoreman for thirty-three years, and was a participant in the New Orleans Steamship Association International Longshoremen's Association Pension Plan.  (Rec. Doc. No. 13-4, Exh. 2.)  He applied for and was granted early retirement benefits from the Pension Plan effective January 1, 1984.  His social security check

1

was directly deposited into the plaintiff's bank account and the funds were used for their joint expenses. The plaintiff and Mr. Robinson were married on May 5, 1996. (Rec. Doc. No. 13-4, Exh. 4.) Mr. Robinson died on November 25, 2004, after falling into a diabetic coma. After Mr. Robinson's death, the plaintiff applied for Mr. Robinson's pension benefits and was denied based on the fact that the plaintiff and Mr. Robinson were not married at the time of his early retirement in 1984. The plaintiff brought this suit on November 18, 2005 seeking a declaratory judgment that the plaintiff is a "qualified spouse" of George Robinson within the meaning of his retirement Plan, and that she has a right to all past and future benefits under the Plan.

## II.    PRESENT MOTION

The defendant filed the instant motion for summary judgment arguing that, as a matter of law, the plaintiff is ineligible for benefits under the Pension Plan because at the time of Mr. Robinson's retirement, the parties were not married, as required by the Plan. Therefore, the defendant avers that the plaintiff's complaint should be dismissed. The plaintiff opposes this motion, arguing that the defendant's decision to deny the plaintiff's application for surviving spouse benefits was an abuse of discretion, and that the defendant misinterpreted and misapplied ERISA and the Plan. Further, the plaintiff argues that the defendant should be estopped from denying the plaintiff surviving spouse benefits because the plaintiff and the deceased relied on the defendant's misrepresentations that the plaintiff would receive these benefits upon the decedent's death.

## III.   LAW & ANALYSIS

Federal Rule of Civil Procedure 56 instructs that summary judgment is proper if the

record discloses no genuine issue as to any material fact such that the moving party is entitled to judgment as a matter of law.  A fact is material if it "might affect the outcome of the suit under governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  No genuine issue of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the non-moving party.  *See Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986).  A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  *Anderson*, 477 U.S. at 248.

The mere argued existence of a factual dispute does not defeat an otherwise properly supported motion.  Therefore, "[i]f the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate.  *Id.* at 249-50 (citations omitted).  Summary judgment is also proper if the party opposing the motion fails to establish an essential element of his case.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  In this regard, the non-moving party must do more than simply deny the allegations raised by the moving party.  *See Donaghey v. Ocean Drilling & Exploration Co.*, 974 F.2d 646, 649 (5th Cir. 1992).  Rather, the non-moving party must come forward with competent evidence, such as affidavits or depositions, to buttress her claims.  *Id.*  Hearsay evidence and unsworn documents do not qualify as competent opposing evidence.  *Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir. 1987).  Finally, in evaluating a summary judgment motion, the court must read the facts in the light most favorable to the non-moving party.  *Anderson*, 477 U.S. at 255.

### A.    Standard of Review

Generally, under ERISA, when an employee benefit plan gives its administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan, a

reviewing court must evaluate the plan administrator's decision under an abuse of discretion standard.  *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *Duhon v. Texaco, Inc.*, 15 F.3d 1302, 1305 (5th Cir.1994); *Haubold v. Intermedics, Inc.*, 11 F.3d 1333, 1336-37 (5th Cir.1994); *Perdue v. Burger King Corp.*, 7 F.3d 1251, 1254 (5th Cir.1993); *Wildbur v. ARCO Chem. Co.*, 974 F.2d 631, 636 (5th Cir.1992).  In this case, the language in the Trust document is explicit that the administrator is vested with discretionary authority to construe the Plan.  Article V, Section 3 of the Trust Agreement provides, "[t]he Board of Trustees shall have sole, final and exclusive authority in the interpretation and application of this Trust Agreement and the Plans established hereunder, as well as any claims for benefits."  Therefore, this Court will review the denial of benefits under an abuse of discretion standard.

### B.      Denial of Benefits

The Board of Trustees, as the Fund's administrator in the case, considered the plaintiff's information, the marriage certificate, and the pension application and concluded that the plaintiff was not a "Qualified Spouse" within the terms of the Plan.  The plaintiff argues that the defendant's interpretation of the plan was an abuse of discretion because it failed to recognize the "26 year uninterrupted spousal union" between the plaintiff and the decedent.

Under Article I, Section 1.34 of the Pension Plan, a "Qualified Spouse" means:

> (i) a spouse who has been <u>legally married</u> to the Employee throughout the one year period immediately preceding the earlier of the Employee's death or Annuity Starting Date, or (ii) if the Employee and spouse are married for less than one year on the Annuity Starting Date, a spouse who is legally married to the Employee on his Annuity Starting Date and for at least a one year period ending on or before the Employee's death, shall be treated as a Qualified Spouse, or (iii) as may otherwise be provided by a QDRO.

*See* Rec. Doc. 13-4, p. 8 (emphasis added).  The "Annuity Starting Date" is defined as the "first

day of the first period for which an amount is received as an annuity, or, in the case of a benefit not payable in the form of an annuity, the first day on which all events have occurred which entitle the Employee to such benefit." *Id.* at p. 3. By the plain language of Section 1.34, in order to be considered a "Qualified Spouse," the plaintiff in this case is required to have been legally married to Mr. Robinson at the time of his retirement in 1984. It is undisputed that Mr. Robinson began receiving benefits from the Plan in 1984, but that he and the plaintiff did not obtain a marriage certificate until 1996.

The plaintiff argues that Section 1.34 is ambiguous because it says that a qualified spouse means being "legally married," but does not state that it "means only" being "legally married." Therefore, the plaintiff argues that the defendant owed Mr. Robinson and the plaintiff and other participants a duty to specifically warn them that a common-law marriage contracted in Louisiana is not legal and does not qualify under the Plan. Furthermore, the plaintiff argues that "[a] common law marriage is not illegal in Louisiana. Louisiana law does not prohibit a common law marriage; it simply doesn't recognize such a marriage that was contracted in Louisiana." (Rec. Doc. 17, p. 5.)

The Louisiana Supreme Court has declared, as early as 1933 that, "[i]f a common-law marriage is contracted in a state whose law sanctions such a marriage, the marriage will be recognized as a valid marriage in Louisiana; but a common-law marriage cannot be contracted by virtue of the law of Louisiana." *Succession of Marinoni*, 148 So. 888, 894 (1933). This rule has remained unchanged. *See Liberty Mut. Ins. Co. v. Caesar*, 345 So.2d 64, 65 (La. Ct. App. 1977) (noting that Louisiana law does not recognize common-law marriage). The plaintiff does not argue that her "common-law marriage" was contracted in any state other than Louisiana.

Since Louisiana law does not recognize common-law marriages contracted in this state, it is indisputable that the plaintiff and the decedent were not "legally married" at the time of Mr. Robinson's retirement in 1984.  Therefore, by the plain language of the Plan, the Board of Directors did not abuse its discretion in determining that the plaintiff did not meet the requirements of a "Qualified Spouse" because the plaintiff and Mr. Robinson were not legally married until many years after the decedent began receiving Plan benefits.[1]

This is a harsh result and it may very well have been different under the laws of another state.  However, whether or not Louisiana should recognize common-law marriages is a matter for the state legislature to address.  It is beyond the reach of this Court.

### C.    Equitable Estoppel

The plaintiff avers that the defendant should be equitably estopped from denying surviving spouse benefits to the plaintiff because she and the deceased relied to their detriment on oral statements that the plaintiff would receive those benefits and on a Designation of Beneficiary document executed by the decedent in 1996.  The plaintiff contends that she and Mr. Robinson were at the longshoreman's hall sometime in May 1996 and that a claims processor informed her that "if George signed a 'Designation of Beneficiary,' [the plaintiff] would be a qualified spouse under his pension plan and [she] would collect all his pension benefits during

---

[1]  Alternatively, the plaintiff contends that ERISA preempts Louisiana law on whether the parties were married because the law is "inconsistent with evolving constitutional standards of marriage and personal autonomy."  Although ERISA specifically states that a plan may provide that participant and spouse be married on the date of the retirement in order to receive Survivor Spouse Benefits, *see* 29 U.S.C. § 1055(f), it provides no definition of marriage that would preempt state marriage law.  Indeed, the United States Supreme Court has traditionally left the realm of domestic relations to the laws of the individual states.  *See Ex Parte Burrus*, 136 U.S. 586 (1890).

6

[her] lifetime in the event of his death." *See* Pl.'s Aff. ¶ 8, Rec. Doc. 13-4. Thereafter, Mr. Robinson executed a notarized document entitled "Designation of Beneficiary," purportedly designating the plaintiff as beneficiary "of any and all pension and retirement programs in which I am a participant or beneficiary." The "Designation of Beneficiary" is not a standard form provided by the Plan, but instead was independently drafted, and notarized by counsel for plaintiff in this case.

The Fifth Circuit, in *Mello v. Sara Lee Corp.*, 431 F.3d 440 (5th Cir. 2005), recently recognized the viability of equitable estoppel claims in ERISA cases. To establish an ERISA-estoppel claim, the plaintiff must establish: (1) a material misrepresentation; (2) reasonable and detrimental reliance upon that representation; and (3) extraordinary circumstances. *Id.* at 444-45. Even if the plaintiff in this case can establish that a material misrepresentation was made, and that the circumstances are extraordinary, the plaintiff cannot establish that her reliance on the alleged oral statements was reasonable. The Fifth Circuit has clearly stated that "ERISA-estoppel is not permitted if 'based on purported oral modifications of the plan terms.'" *Mello*, 431 F.3d at 446 (*citing Weir v. Fed. Asset Disposition Ass'n*, 123 F.3d 281, 289 (5th Cir. 1997)). The *Mello* court further noted that "[s]uch claims are precluded because ERISA provides that every employee benefit plan shall be established and maintained pursuant to a written instrument." *Id.* (internal citations omitted). ERISA's policy against informal modifications of the Plan precludes a finding that the plaintiff was reasonable in relying on any oral statements made by claims processors at the longshoreman's hall.

While the deceased did sign a "Designation of Beneficiary" document naming the plaintiff as the sole beneficiary of any and all pension and retirement programs, this document

was executed in 1996 and directly contradicts the plain language of the Plan requiring that the

plaintiff be legally married to Mr. Robinson in 1984 to be a "qualified spouse."  The Fifth

Circuit has held that a finding that the terms of the Plan are unambiguous undercuts the

reasonableness of any detrimental reliance.  *Id.*  Even if material misrepresentations were made

and the situation were extraordinary, the Court cannot conclude that the plaintiff's reliance on

the alleged oral statements was reasonable.  Therefore, the plaintiff cannot establish a claim for

equitable estoppel under ERISA.[2]

## IV.    CONCLUSION

For the foregoing reasons, IT IS ORDERED that the defendant's motion for summary

judgment is GRANTED and that the plaintiff's claims are hereby DISMISSED WITH

PREJUDICE.  Accordingly, IT IS FURTHER ORDERED that the plaintiff's cross-motion for

summary judgment is DENIED.

New Orleans, Louisiana, this 2nd day of April, 2007.

_____

UNITED STATES DISTRICT JUDGE

---

[2]  The Court notes that the plaintiff's claim would not even be viable under the more
liberal approach to ERISA estoppel adopted in the Tenth Circuit, which appears to recognize
such a claim not only where the "representation constituted an interpretation of an ambiguous
term of an employee benefits plan," but also where a "representation concerned an unambiguous
term of an employee benefits plan [and] was based on lies, fraud, intent to deceive or other
egregious or extraordinary circumstances," *see Swearingen v. Honeywell, Inc.*, 189 F. Supp. 2d
1189, 1196 (D. Kan. 2002), because she cannot demonstrate that the statement made at the
longshoreman's hall was based on such evil motives.